Green, J.,
delivered the opinion of the court.
We are satisfied from the testimony in this'cause, that the defendant and Sallard, his late wife’s father, intended and understood their conversation, after the death of Mrs. McKis-ick, as a promise on the part of McKisick, to give the negroes to his daughter Eleanor, rather than a gift of them to her, by the old man Sallard.
Sallard himself, upon whose testimony we rely, says, that he put the negroes, Murphey, Anu and Patsey, in the possession of McKisick, shortly after his marriage to the witness’ *435 daughter, without any condition or restriction; and that he gave Sam to Eleanor, defendant’s daughter, shortly after her birth. He states that after the death of his daughter, the wife of McKisick, they had a conversation, in which he told McKisick he wanted Eleanor to have the negroes he had put into his, McKisick’s possession, and if she should die without an heir, he wanted McKisick to have them. Mc-Kisick said he was perfectly willing to have it so. After Eleanor’s marriage to complainant, defendant promised witness that when his daughter went to housekeeping he would give her the negroes. This he failed to do, but afterwards offered to buy them from the witness.
From this statement, we do not understand the old man Sallard as having considered his gift to McKisick as void, because not made in writing, as required by the act of North Carolina of 1806; and that he, therefore, assumed to resume the ownership of the negroes, and make a new gift of them to Eleanor. On the contrary, it appears rather as the expression of his wish, that McKisick should give the negroes that had been considered as her mother’s property, to Eleanor. That McKisick so regarded it is manifest, from the fact that he promised to give the negroes, as the old man wished. He considered himself still as the owner, but was willing to gratify his father-in-law, and give the property in the way he desired.
This view of the case is no way important except to explain the character in which McKisick subsequently held possession of the negroes; for we are to presume, unless there be satisfactory evidence to the contrary, that he continued to hold in the character in which he acquired the possession. For this court has decided in the case of McDonald vs. McDonald, 8 Yer. 145, in pursuance of the North Carolina decisions upon the construction of the act of North Carolina of 1806, that the mere fact, that a father puts his child in possession of negroes, will not, no matter how long he retains that possession, give him a title to them by the statute of limitations. The reason why the statute of limitations does not run in favor of such possession is, that the property *436 is not held adversely. The possessor is a mere bailee for the owner; and the possession is that of the owner.
As to three of the negroes now in dispute, we do not think they were ever held in fact by McKisick for his daughter. Sallard, the grandfather, did not give them to the complainant Eleanor, he only desired she should have them, and the defendant promised to give them to her. The very terms they use, that McKisick should give them, shows that the old man did not understand himself as resuming his right to control them, and then as parting with the right in favor of Eleanor. The proof of McKisick’s declaration as to Eleanor’s right to the negroes, is too loose, unsatisfactory and inconclusive, to authorise us to say that he actually held them for her, adversely to her grandfather.
We think, therefore, that as to these three negroes and their increase, Eleanor acquired no title by the statute of limitations. But as it regards the negro Sam, we are of a different opinion.
This negro was given to Eleanor when she was a child, and was placed in the possession of ner father for her. Sal-lard agreed to part with his right in favor of Eleanor, and McKisick received the negro as hers, and must be regarded as having continued so to hold him. It is absurd to say, that this was not an adverse possession to the title of the grandfather; and if so, it was the possession of Eleanor, for whom it had originally been taken, as there is no evidence to show a change of the character in which it was first held; and, indeed, as that character could not have been changed, had the defendant desired it, she being" an infant, and he her natural guardian. This possession had been held for many years in North Carolina, and for more than three years in Tennessee, before the commencement of the suit.
The complainants are therefore entitled to Sam, and to an account for his hire, from the time of Eleanor’s marriage.— McDonald vs. McDonald, 8 Yer. 145.
Reverse the decree, and decree for the complainants, as herein directed.